IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TABITHA RYAN SNOW,

                Plaintiff,

v.                                                              OPINION and ORDER

NANCY BERRYHILL,                                         18-cv-273-jdp
  Acting Commissioner, Social Security Administration,

                Defendant.

---

Plaintiff Tabitha Ryan Snow seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, finding her not disabled under the Social Security Act. The administrative law judge found that Snow had several severe impairments, but ultimately concluded that Snow retained the residual functional capacity to perform light work with some additional restrictions. The ALJ found the Snow could meet the demands of a significant number of jobs in the economy and denied her application for benefits.

On appeal, Snow contends that the ALJ made two errors that require remand: (1) failing to give proper weight to the opinions of two of Snow's treating physicians; and (2) failing to fully account for Snow's moderate limitations in concentration, persistence, and pace in Snow's residual functional capacity (RFC). The case is scheduled for oral argument on December 6, 2018, but the court concludes that no oral argument is needed in light of the relatively straightforward nature of the issues. The court concludes that the ALJ did not err in weighing the opinions of Snow's treating physicians. But the RFC did not reflect Snow's acknowledged moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. The court will remand the case for further proceedings.

BACKGROUND

Snow applied for social security benefits on April 1, 2014, alleging disability beginning on January 21, 2007. Her claim was denied both initially and upon reconsideration, so she filed a written request for a hearing, which was held before ALJ Debra Meachum on December 1, 2016. Just before the hearing, Snow amended the onset of disability date to April 1, 2014, R. 345,[1] which meant the Snow would be eligible, if at all, only for supplemental security income under Title XVI.

The ALJ found that Snow suffered from the following severe impairments: degenerative disc disease; back disorders; obesity; knee joint dysfunction; an affective disorder; anxiety; and a personality disorder.

In determining Snow's RFC, the ALJ considered the following evidence: Snow's testimony; Snow's self-prepared function reports; medical opinions of three treating physicians, two state agency medical consultants, and two state agency psychological consultants; a third-party witness statement from Snow's friend; and Snow's global assessment of functioning (GAF) score of 51–60. The ALJ largely discredited Snow's own reports of her limitations as not fully consistent with the evidence of record. The ALJ did not extensively cite Snow's medical records. The ALJ gave partial weight to one of Snow's treating physicians, Dr. Johnson. But Johnson's opinion was given in 2013, before the amended onset date, so it does not appear to have mattered to the ALJ's decision. The ALJ gave the other two treating source opinions little weight because they were "not consistent with and supported by the substantial medical evidence" in the record and opined on issues reserved to the Social Security Administration.

---

[1] Record cites are to the administrative transcript, located at Dkt. 7.

R. 27. The ALJ gave the remaining state agency opinions (and the GAF score) at least partial weight because she found them largely "consistent with and supported by substantial medical evidence." R. 26–27. The opinions of the two state agency psychological consultants are particularly significant to the issues raised on appeal.

The ALJ determined that Snow had the ability to perform light work with the following additional restrictions:

> Occasional climbing, balancing, stooping, kneeling, crouching, and crawling;
>
> Unskilled work involving simple, routine, and repetitive tasks, with no fast-paced production line or tandem tasks and only occasional changes in the work setting;
>
> Occasional interaction with supervisors, co-workers, and the public;
>
> Can maintain concentration, persistence, and pace for no more than two hours at a time before needing a 10–15 minute break.

R. 24.

Based on the testimony of a vocational expert (VE), the ALJ found that Snow could not return to her past work as a certified nursing assistant. Within the RFC above, Snow could perform the jobs of an office helper, packager, and sorter. Those jobs are available in significant numbers, and thus Snow was not disabled.

ANALYSIS

The court reviews the final decision of an ALJ "to determine whether it applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stephens v. Berryhill*, 888 F.3d 323,

327 (7th Cir. 2018). The court reviews the record as a whole, but it cannot reconsider facts, weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Id.*

## A. Treating source medical opinions

Snow contends that the ALJ erred by according only little weight to the opinions of her treating physicians, Drs. Freier and Chaney. But Snow has made no showing that those opinions support any greater RFC restrictions than the ones the ALJ ultimately found.

The opinions offered by Freier and Chaney are conclusory and short. Freier's opinion lists Snow's several psychological diagnoses and states that she is in treatment. R. 1829. But Freier does not cite any specific functional limitation, only offering the conclusion that Snow is disabled. *Id*. ("Given the severity of her symptoms, her ability to work is affected and she is disabled by these conditions."). Chaney's opinion is similarly conclusory. It states only that Snow is "disabled for an indeterminate period of time due to low back pain, r[ight] let sciatica, and [sacroiliac] joint pain." R. 1837.

The ALJ accorded these opinions little weight for two reasons. First, the ALJ deemed them "not consistent with and supported by the substantial medical evidence." Second, the conclusion that Snow was disabled is a finding reserved to the Social Security Administration. *See* 20 C.F.R. 404.1527(d)(1), 20 C.F.R. § 416.927(d)(1). Snow contends that these are not good reasons for discounting treating source opinions, which are afforded presumptively greater weight under 20 C.F.R. § 404.1527(c)(2).

The ALJ's explanation for giving Freier's and Chaney's opinions only little weight is itself conclusory. The ALJ does not point to any inconsistency between these opinions and the evidence. But the ALJ was right to disregard the ultimate conclusion: under the regulations

4

applicable to Snow, opinions about whether a claimant is disabled are reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d) (applicable to claims filed before March 27, 2017).

But Snow cannot show that crediting these two highly conclusory opinions would support a finding of disability. Stripped of the conclusion that Snow was disabled, these two treating source opinions are nothing but a list of impairments. The ALJ found that Snow had seven severe impairments, R. 22, and her list includes or closely tracks those mentioned by Freier and Chaney. Snow cannot show that Freier's and Chaney's opinions would support any additional impairment or limitation beyond those already found by the ALJ. So any error in evaluating the conclusory opinions of Freier and Chaney was harmless.

**B. RFC deficiencies**

Snow contends that the ALJ's assessment of Snow's RFC is flawed because it did not fully capture the state agency psychologists' findings that Snow had moderate limitations in CPP.

The ALJ's assessment of Snow's mental limitations is superficial. At step three, the ALJ very briefly discusses Snow's own function reports. R. 23 (discussing R. 286–90; R. 291–300; R. 308–13). It is hard to tell what the ALJ drew from these reports, or how the ALJ concluded that Snow suffered from moderate limitations in interacting with others and in CPP. But reading the ALJ's decision as a whole makes it clear that the ALJ relied nearly exclusively on the opinions of two state agency psychologists, Dr. Beth Jennings and Dr. Russell Phillips. The RFC, more or less, repackages the agency consultants' findings.

Snow contends that the ALJ should not have relied on the agency consultants. Dkt. 13, at 30–32. Snow is right that the ALJ is confusing about what weight she is giving the agency psychological consultants: in one paragraph the ALJ says she is giving them "partial weight,"

and also "significant weight." But the only substantive reason that Snow gives for why the ALJ should not have relied on the agency consultants is that the ALJ should have credited the opinions of Snow's treating providers instead. *Id.*, at 31–32. But those opinions are merely conclusory, as discussed above.[2]

But if the ALJ gives full credit to the agency psychological consultants, then the ALJ would have to fully account for the limitations they find. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). These include all deficiencies in a claimant's ability to maintain concentration, persistence, or pace. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).

In the initial consultative mental evaluation, Dr. Jennings indicated on section I of the Mental RFC Assessment form—the worksheet portion of the form—that Snow was moderately limited in three of the eight categories of limitations in sustained concentration and persistence: (1) her ability to maintain attention and concentration for extended periods; (2) her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In the narrative explanation that followed, Jennings explained that "moderate impairment in the above areas were evident on

---

[2] The ALJ's decision has another contradiction. It says both that Snow has mild limitations in adaptation, R. 23, and that she has moderate limitations in adaptation, R. 27. Snow does not press this issue, and the ALJ seems to have accounted for moderate limitations in adaptation, so the error would be harmless. Still, these inconsistencies make the ALJ's decision appear sloppy as well as superficial.

review of [claimant's mental status exams], therapy appointments and [activities of daily life]," R. 155, and that Snow "is perhaps moderately impaired in stress tolerance, concentration, persistence and pace and in getting along with supervisors and coworkers." R. 157.

On reconsideration, Dr. Phillips completed the same form and indicated the same moderate limitations in the worksheet portion. In the narrative portions, he explained that "[t]he claimant can maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision." R. 120. He also opined that, "[c]onsidering her mental impairments only, the claimant remains able to persist at simple tasks over time under ordinary conditions." R. 121.

In her decision, the ALJ explicitly linked her mental RFC determination to the findings by these two consultants. She stated that "[c]onsidering the claimant's moderate limitations in concentration, persistence, or maintaining pace, [she] limited the claimant to unskilled work involving simple, routine, and repetitive tasks, no fast-paced production line or tandem tasks, with breaks every two hours." R. 27.

Both agency psychologists found three CPP-related limitations. Snow argues that the ALJ failed to account for all three of them in the RFC.

As to the first and third CPP limitations, Snow is incorrect. The ALJ included restrictions in the RFC that logically correspond to Snow's moderate limitations in maintaining concentration (the first CPP limitation) and working without interruptions and maintaining a consistent pace (the third CPP limitation). Those are the RFC restrictions limiting Snow to unskilled work involving simple, routine, and repetitive tasks, with no fast-paced production line work and breaks every two hours. The ALJ's analysis is conclusory and does not explicitly set out how each element of the RFC is specifically responsive to Snow's functional limitations.

7

But Snow does not explain how or why the restrictions in the RFC are insufficient to manage those moderate limitations. To warrant remand, a claimant must, at minimum, "identify medical evidence that would justify further restrictions." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

But Snow is right about the second limitation: Snow's moderately limited ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. The ALJ does not explain how the RFC addresses this specific functional limitation. The RFC gives Snow a break every two hours, but it does nothing to address limitations on being punctual, having regular attendance, and working within a schedule.

The Commissioner argues that the ALJ did not have to specifically address each of the moderate findings on the Mental RFC Forms because the narrative portions of the state agency psychologists' opinions adequately encapsulated and translated the worksheet observations. Under this theory, Phillips's finding in the narrative section that Snow "remains able to persist at simple tasks over time under ordinary conditions" adequately translated his worksheet observation that Snow was moderately limited in her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." R. 121, 120. The court is not persuaded. Rather than translating and encapsulating the worksheet finding about schedule, punctuality, and attendance, Phillips's narrative simply ignores it without explanation.[3]

---

[3] As for Jennings's opinion, her narrative explanation that Snow "is perhaps moderately impaired in stress tolerance, concentration, persistence and pace and in getting along with supervisors and coworkers" simply restates the earlier worksheet findings at a higher level of generality. So Jennings's narrative explanation is not a helpful translation of her worksheet findings either.

The Commissioner cites cases in which the court of appeals has deemed agency consultants' narrative observations sufficient to translate their worksheet observations. The principle is a sound one: sometimes a narrative explanation adequately addresses and explains a worksheet finding. But the cases cites by the Commissioner are distinguishable. In *Capman v. Colvin*, for instance, the court found that an agency psychologist's worksheet finding that the claimant was moderately limited in his ability to complete a day or week of work without interruption was not inconsistent with (and was therefore adequately translated by) his assessment in the narrative section that the claimant could adequately manage the stress of unskilled tasks. 617 Fed. App'x 575, 579 (7th Cir. 2015). The root of Capman's CPP limitations was the fact that he suffered from anxiety attacks around other people. The ALJ's RFC determination in *Capman* limited the claimant to "tasks that did not require working with the public or in close proximity or cooperation with others." *Id.* at 578. Because the RFC otherwise addressed Capman's primary stressor, the court of appeals concluded that no further RFC restrictions were necessary and the narrative section was a fair encapsulation of Capman's functional capacity.

The court of appeals reached a similar conclusion in *Johansen v. Barnhart*, where an agency consultant's conclusion that the claimant could perform "repetitive, low-stress" work was deemed sufficient to translate the claimant's moderate limitations in the ability to maintain a schedule and complete a workday and workweek. 314 F.3d 283, 288–89 (7th Cir. 2002). But there, again, the claimant's CPP limitations stemmed from the claimant's panic disorder, and the court held that limiting the claimant to repetitive, low-stress work obviated the need for further CPP-related limitations. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (limiting *Johansen*).

By contrast, in this case, nothing in the ALJ's opinion (or elsewhere in the record) indicates that the agency consultants' narrative explanations sufficiently translate the worksheet finding that Snow was moderately impaired in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances. There is nothing in the record to indicate that other CPP-related restrictions in the RFC would somehow obviate issues related to punctuality and attendance. And cases since *Capman* and *Johansen* make clear that "[w]orksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015).

The agency consultants' narrative explanations failed to address or explain their worksheet findings about schedule, punctuality and attendance. The ALJ should have taken those findings into account when posing hypotheticals to the VE and in formulating the RFC. And because the ALJ did not account for all of Snow's limitations in her questioning of the VE, it is unclear whether Snow is indeed capable of performing the jobs that the VE proposed. For that reason, the ALJ's decision is not supported by substantial evidence and must be remanded. *See Dehaan v. Berryhill*, No. 17-cv-1347, 2018 WL 3831350, at *4 (E.D. Wis. Aug. 13, 2018) (ALJ's failure to incorporate moderate CPP limitations listed in worksheet portion of agency consultant opinion compromised RFC determination and warranted remand); *McEwen v. Berryhill*, No 17 c 3379, 2018 WL 2021226, at *4 (N.D. Ill. May 1, 2018) (same).

C. **Instructions for remand**

On remand, the ALJ must formulate an RFC that accounts for all documented limitations of concentration, persistence or pace, including Snow's moderately limited ability to perform activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances. Alternatively, if the record does not support the agency consultants' findings that Snow is moderately impaired in this way, the ALJ should explain why and discount the agency consultants' findings accordingly. The ALJ should also take care to explain, in a non-conclusory way that draws from the evidence in the record, how each aspect of the RFC addresses claimant's specific limitations.

ORDER

IT IS ORDERED that the decision of Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff Tabitha Ryan Snow's applications for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The December 6, 2018 oral argument is CANCELED as unnecessary.

Entered December 4, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge